IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE

GARY LYNN SOUTHERLAND,    )
    )
    Plaintiff,    )
    )
v.    )    No.  14-1085-T
    )
COMMISSIONER OF    )
SOCIAL SECURITY,    )
    )
    Defendant.    )

---

ORDER AFFIRMING DECISION OF COMMISSIONER

---

Plaintiff has filed this action to obtain judicial review of Defendant Commissioner's final decision denying his application for disability insurance benefits under Title II of the Social Security Act ("the Act"). Plaintiff's application was denied initially and upon reconsideration by the Social Security Administration. Plaintiff then requested a hearing before an administrative law judge ("ALJ"), which was held on May 31, 2012.

On September 14, 2012, the ALJ issued a decision, finding that Plaintiff was not entitled to benefits. The Appeals Council affirmed the ALJ's decision. This decision became the Commissioner's final decision. Plaintiff filed this action, requesting reversal of the decision of the Commissioner. For the reasons set forth below, the decision of the Commissioner is AFFIRMED.

Pursuant to 42 U.S.C. § 405(g), a claimant may obtain judicial review of any final decision made by the Commissioner after a hearing to which he was a party. "The court shall

have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." Id. The court's review is limited to determining whether or not there is substantial evidence to support the Commissioner's decision, 42 U.S.C. § 405(g), and whether the correct legal standards were applied. See Lindsley v. Commissioner, 560 F.3d 601, 604–08 (6th Cir. 2009); Kyle v. Commissioner, 609 F.3d 847, 854 (6th Cir. 2010).

The Commissioner, not the court, is charged with the duty to weigh the evidence, to make credibility determinations and resolve material conflicts in the testimony, and to decide the case accordingly. See Bass v. McMahon, 499 F.3d 506, 509 (6th Cir. 2007). When substantial evidence supports the Commissioner's determination, it is conclusive, even if substantial evidence also supports the opposite conclusion. See Foster v. Halter, 279 F.3d 348, 353 (6th Cir. 2001); Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986). A reviewing court must defer to findings of fact by an appeals council when those findings conflict with the factual findings of the ALJ. Id. at 545.

Plaintiff was born on June 11, 1967. R. 118. At the time of the hearing, he was forty-four years old. R. 66. He last worked on April 15, 2010, the date that he sustained his allegedly disabling injuries. R. 66-67. He was previously self-employed and has past relevant work as a tree trimmer and a mechanic. R. 67. He alleges disability due to a broken arm with reconstruction of his tendons and muscles. R. 151.

The ALJ enumerated the following findings: (1) Plaintiff met the insured status requirements through December 31, 2010; (2) Plaintiff has not engaged in substantial gainful activity from the alleged onset date through the last date insured; (3) Plaintiff has the following severe impairments: history of fractured right radius and right arm collateral ligament injury requiring surgical repair; but he does not have impairments, either alone or in combination, that meet or equal the requirements of any listed impairment contained in 20 C.F.R. pt. 404, subpt. P, app. 1 of the listing of impairments; (4) Plaintiff retains the residual functional capacity to perform light work except that he is limited to no more than occasional reaching, handling, fingering, and feeling in the right arm; he is unable to perform any overhead lifting or reaching with the right arm; (5) Plaintiff is unable to perform his past relevant work; (6) Plaintiff was a younger individual with a high school education on the alleged onset date; (7) transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules ("the grids") as a framework supports a finding that Plaintiff is not disabled whether or not he has transferable job skills; (8) considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform; (9) Plaintiff was not under a disability as defined in the Act at any time through the date of this decision.

The Social Security Act defines disability as the inability to engage in substantial gainful activity. 42 U.S.C. § 423(d)(1). The claimant bears the ultimate burden of establishing an entitlement to benefits. Born v. Secretary, 923 F.2d 1168, 1173 (6th Cir.

1990).  The initial burden of going forward is on the claimant to show that he is disabled

from engaging in his former employment; the burden of going forward then shifts to the

Commissioner to demonstrate the existence of available employment compatible with the

claimant's disability and background.  Id.

The Commissioner conducts the following, five-step analysis to determine if an

individual is disabled within the meaning of the Act:

> 1. An individual who is engaging in substantial gainful activity will not be found to be disabled regardless of medical findings.
>
> 2. An individual who does not have a severe impairment will not be found to be disabled.
>
> 3. A finding of disability will be made without consideration of vocational factors, if an individual is not working and is suffering from a severe impairment which meets the duration requirement and which meets or equals a listed impairment in Appendix 1 to Subpart P of the regulations.
>
> 4. An individual who can perform work that he has done in the past will not be found to be disabled.
>
> 5. If an individual cannot perform his or her past work, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed.

20 C.F.R. § 404.1520(a)(4); Howard v. Commissioner, 276 F.3d 235, 238 (6th Cir. 2002).

Further review is not necessary if it is determined that an individual is not disabled at any

point in this sequential analysis.  20 C.F.R. § 404.1520(a).  Here, the sequential analysis

proceeded to the fifth step with a finding that, although Plaintiff cannot perform his past

relevant work, there is a substantial number of jobs that exist in the national economy that

he can perform.

Plaintiff argues that the ALJ erred by failing to consider all of his impairments, specifically his alleged mental impairment. In support of his argument, Plaintiff relies on medical opinion evidence from consultative examiner William Fulliton, Ph.D., and non-examining agency expert Thomas Nielson, Psy.D., which purportedly show that he had a moderate impairment in his ability to maintain attention, make decisions, and tolerate social interaction. R. 405-10, 423, 427, 429. Plaintiff's argument is not persuasive because substantial evidence supports the ALJ's determination that the medical evidence did not show that Plaintiff has a disabling mental impairment.

Dr. Fulliton noted that Plaintiff had some difficulty with memory but otherwise found Plaintiff's mental status examination to be normal. R. 407-08. On a form, he marked that Plaintiff had only mild mental limitations. R. 409-10. In his narrative, he stated that Plaintiff's ability to sustain concentration and persistence was moderately impaired. R. 408. He also opined that Plaintiff's ability to remember was mildly impaired and his ability to interact socially and adapt to change was not impaired. R. 408.

The non-examining psychologist Dr. Nielson based his opinion on Dr. Fulliton's report. He opined that Plaintiff was mostly unrestricted but had moderate limitations in his ability to maintain attention and concentration for extended periods and his ability to complete a normal workday and workweek without interruption from psychological symptoms. R. 427-28.

The ALJ acknowledged that Dr. Fulliton had suggested moderate limitations and that Dr. Nielson had suggested similar limitations, but the ALJ rejected both doctors' conclusions

because Plaintiff had not sought mental health treatment throughout the relevant period and there was no other evidence supporting any work-related limitations. None of Plaintiff's treatment records document any significant or lasting restrictions in his mental status, concentration, social functioning, or memory.

The ALJ may reject an opinion of a one-time consultative doctor and find a mental impairment non-severe when, as here, the claimant has not sought any specialist mental health care or showed that he had any mental symptoms in any medical treatment notes. See Murphy v. Astrue, 2013 WL 829316 (M.D. Tenn.) report and recommendation adopted sub nom. Murphy v. Colvin, 2013 WL 4501416 (M.D. Tenn.) (lack of mental health care treatment and lack of depressive symptoms was sufficient to find a mental impairment non-severe, notwithstanding the opinion of a consultative examiner.)

The ALJ used the "special technique" to analyze Plaintiff's mental limitations. See 20 C.F.R. §§ 404.1520a(c)(3), (d)(1); 416.920a(c)(3), (d)(1); 20 C.F.R. pt. 404, subpt. P, app. 1, §12.00C (2013). Because Plaintiff had never sought treatment for mental disorders and there was no clinical evidence of any serious abnormalities, the ALJ found that Plaintiff had no more than mild limitations in his ability to perform activities of daily living, social functioning, or concentration and that he had never "decompensated" as that term is defined in the regulations. When a claimant has no more than mild limitations in any of the four domains that form the special technique, as in the present case, the mental impairment is non-severe. See 20 C.F.R. §§ 404.1520a(d)(1); 416.920a(d)(1) (2012). Thus, substantial evidence supports the ALJ's non-severity finding as to Plaintiff's mental limitations.

Plaintiff argues that the ALJ's residual functional capacity should have included greater exertional limitations. Plaintiff specifically contends that the ALJ should have imposed greater limitations on his ability to use his arms. He relies on medical opinions from consultative examiner Robert Sanner, M.D., and from non-examining agency doctors, John H. Mather, M.D., and Karla Montague-Brown, M.D. Dr. Sanner imposed a ten-pound lifting restriction and limitations of motion of Plaintiff's right arm, R. 311, and Dr. Mather and Dr. Montague-Brown both opined that Plaintiff could never push/pull, reach overhead, or handle or finger with the right arm. R. 314, 316, 432, 434.

Dr. Sanner was not a treating physician and only saw Plaintiff on one occasion. Dr. Sanner disclaimed an ability to render an opinion regarding Plaintiff's residual functional capacity, explaining that he was "unable to make a determination about the patient's ability to perform" in the areas that he had been asked to comment on. R. 312. As for Dr. Mather and Dr. Montague-Brown, they reviewed Plaintiff's medical files without the benefit of later-submitted medical records that showed that he continued to improve after they had seen him.

Plaintiff suffered a serious workplace injury to his right arm while cutting a tree. He had surgery on his hand on April 15, 2010, by Michael Calfee, M.D., R. 200-04, 291, and, by June, he had regained full strength in his elbow. R. 296. In July 2010, treating physician Jeffry Watson, M.D., imposed specific activity restrictions on Plaintiff. Plaintiff could no longer perform normal farming tasks due to limitations in rotating his right forearm and the inability to lift to his shoulder. R. 293. Plaintiff could not climb and had only one hand to

perform "forceful manual labor" even though the doctor had "given him clearance for load bearing" on the right. Dr. Watson opined that Plaintiff would eventually gain greater movement with the elbow. Id.

The ALJ's residual functional capacity was consistent with Dr. Watson's opinion. The ALJ limited him from having to lift over his shoulder, and she restricted handling and fingering to an occasional basis. The ALJ also limited Plaintiff to light work, meaning Plaintiff would not be required to perform forceful manual labor.

Additionally, Plaintiff appeared more active than expected if he were as limited as he claimed. For instance, on November 10, 2010, Plaintiff called in to his physical therapist to explain that he would be absent because he was "having to do some work." R. 360. Plaintiff testified that he still participated in the tree trimming business, although his activities were limited to performing quotes and supervising. R. 70. Plaintiff also drove a tractor to pick up hay and feed livestock. R. 78-79. In December 2010, he reported that he "split wood earlier today" suggesting a far greater range of motion and use of both arms than Plaintiff claims. R. 369. See Ranker v. Barnhart, 2008 WL 2941336 (M.D. Tenn.) (activities like chopping and carrying wood are not consistent with alleged disability).

It is the ALJ's responsibility to determine residual functional capacity based on all the relevant evidence, including medical records, observations of treating physicians and others, and the claimant's own description of his limitations. See Anderson v. Shalala, 51 F.3d 777 (8th Cir. 1995); 20 C.F.R. §§ 416.945(a) & 416.946. Here, the ALJ considered all of the evidence in the record and adequately explained the basis for her residual functional capacity

finding. As the ALJ's residual functional capacity was within the "zone of choice" supported by substantial evidence, her finding is upheld. See Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986) (en banc).

After finding that Plaintiff could not perform his past relevant work, at step five, the ALJ determined that jobs exist in significant numbers that Plaintiff can perform by relying on the testimony of a vocational expert. The ALJ asked the vocational expert about an individual of Plaintiff's age, education, work experience, and residual functional capacity. The vocational expert responded that such an individual was capable of performing the jobs of as a scaling machine operator, mill stenciler, or ironer. R. 82. Because the hypothetical question included the limitations the ALJ found credible, the vocational expert's testimony that Plaintiff could perform work existing in significant numbers in the national economy was substantial evidence in support of the ALJ's determination.

Because there is substantial evidence in the record supporting the Commissioner's decision denying Plaintiff's application for benefits, the decision of the Commissioner is AFFIRMED. The clerk is directed to enter judgment accordingly.

IT IS SO ORDERED.

s/ **James D. Todd**
JAMES D. TODD
UNITED STATES DISTRICT JUDGE